UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRENDA E.,

                              Plaintiff,

   v.                                                  5:20-CV-093 (ATB)

ANDREW SAUL,

                              Defendant.

---

ELIZABETH V. KRUPAR, ESQ., for Plaintiff
CHRISTOPHER L. POTTER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 2, 4).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on September 23, 2016, alleging disability beginning November 15, 2014. (Administrative Transcript ("T") at 1993). Her application was denied initially on December 7, 2016. (T. 1915, 1931-40). At the request of the plaintiff, Administrative Law Judge ("ALJ") Elizabeth Koennecke conducted a hearing on September 18, 2018, at which plaintiff gave testimony. (T. 1874-99).

In a decision dated October 17, 2018, the ALJ found that plaintiff was not

disabled. (T. 19-30). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 13, 2019. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

> which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was born on May 18, 1972, making her 46 years old on the date of the administrative hearing. (T. 1878). She lived with her mother, her 23-year-old son and her 11-year-old daughter. (T. 1894). Plaintiff had a driver's license and GED. (T. 1894, 1896.).

Plaintiff testified about her various medical impairments, including herniated/bulging discs, arthritis, shoulder impingement and rotator cuff tears, that caused constant, daily pain in her neck and shoulders. (T. 1879-80). Plaintiff tried to alleviate the pain with heat, ice, medication, and injections. (T. 1880-81). As a result

4

of these conditions, she was limited in her ability to lift, reach, push and pull. (T. 1881-82). In addition, plaintiff's hands were numb and weak. (T. 1884). She had carpal tunnel surgery on her left hand, which resolved the "tingling." (*Id.*). She continued to struggle with clasping buttons and picking up items. (T. 1885). Plaintiff also had low back pain that radiated down her right leg. (*Id.*). She experienced migraine headaches at least twice a week that caused nausea and light and sound sensitivity. (T. 1890). Medication helped, but did not always take her migraine pain away. (*Id.*). At times her migraines lasted eleven hours. (T. 1891). In addition, plaintiff was diagnosed with atrial fibulation and congestive heart failure. (T. 1892). She slept with a CPAP machine. (*Id.*).

Plaintiff's chronic pain affected her sleep, waking her every two to three hours. (T. 1886-87). As a result she was "drained," and had difficulty concentrating. (T. 1887-88). She tried to take walks, however after one block she experienced pain in her leg, neck and head. (T. 1888). It was painful for plaintiff to sit up for a long period of time without head support. (*Id.*). She attempted to cook for her family, but needed assistance with lifting and bending. (T. 1894-95). She tried to vacuum and do laundry. (T. 1895). Plaintiff required "a lot" of breaks when performing household chores. (T. 1896). Driving exacerbated plaintiff's leg pain. (*Id.*). She talked with friends on the phone, but did not go out socially. (T. 1897).

## IV. THE ALJ'S DECISION

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her application date of August 31, 2016. (T. 22). Next, at step two, the ALJ

found that plaintiff had the following severe impairments: migraine headaches, obesity, neck impairment, back impairment, and bilateral shoulder impairment. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 25).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform a full range of light work, with the exception that plaintiff could only occasionally stoop and squat. (T. 25). Next, the ALJ determined that plaintiff had no past relevant work. (T. 29). However, the ALJ found that plaintiff's additional postural limitations had "little or no effect on the occupational base of unskilled light work, because an individual needs to stoop only occasionally to perform substantially all of the exertional requirements of most light jobs." (T. 29-30). Accordingly, the ALJ determined that plaintiff was not disabled from the application date of August 31, 2016 through the date of the ALJ's decision.[1] (T. 30).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ failed to develop a full and fair record. (Plaintiff's Brief ("Pl.'s Br.") at 7-13) (Dkt. No. 9).

2.   The ALJ failed to properly evaluate plaintiff's fibromyalgia under SSR 12-2p. (Pl.'s Br. at 13-15).

---

[1] The ALJ alternatively found that "even if the [plaintiff] were limited to the full range of sedentary work activity, she would not be found disabled." (T. 30).

    3.      The ALJ erred in failing to identify plaintiff's mental health impairments, congestive heart failure, and carpal tunnel syndrome as severe impairments. (Pl.'s Br. at 15-20).

    4.      The ALJ improperly assessed the medical evidence. (Pl.'s Br. at 20-25).

Defendant argues that the ALJ properly considered the evidence of record, and the Commissioner's decision is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 2-25) (Dkt. No. 15). For the following reasons, this court finds that the ALJ failed to adequately apply the treating physician rule to the opinion of plaintiff's neurologist, and remand is therefore warranted.

## DISCUSSION

## VI.   RFC/WEIGHING EVIDENCE

    **A.**    **Legal Standards**

        **1.**    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    **Weight of the Evidence/Treating Physician**

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues

are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v.*

*Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B. Application

Plaintiff argues that the ALJ improperly assessed the opinion of her treating neurologist, Sundus Latif, M.D.  (Pl.'s Br. at 22-26).  Specifically, plaintiff contends that the ALJ failed to explicitly consider the *Burgess* factors before assigning Dr. Latif's opinion less than controlling weight, or to otherwise provide "good reason" for the limited weight afforded.  (*Id.*).

Dr. Latif's medical source statement, dated October 17, 2016, was the only formal opinion provided to the agency from a treating physician, and was co-signed by physician's assistant ("PA") Lisa Trickey.[2] (T. 2361-65).  In the October 2016 opinion, Dr. Latif and PA Trickey stated that they had seen plaintiff every two months since September 2014, and identified her diagnoses of chronic migraines, neck pain, fibromyalgia and carpal tunnel syndrome.  (T. 2361).  They described plaintiff's headaches as occurring two to three times per week, with reported pain levels of

---

[2]PA Trickey submitted a second medical source statement on September 10, 2018.  (T. 2348).  This opinion was not cosigned by Dr. Latif.  (T. 2442).

10

between eight and ten out of ten.  (*Id.*).  Included among the symptoms associated with plaintiff's headaches were nausea, "photosensity,"[3] noise sensitivity, and muscle spasms.  (*Id.*).  Dr. Latif and PA Trickey noted that plaintiff's headaches were exacerbated by bright lights and noise, and that she obtained relief from medication and Botox injections.  (T. 2362).  They attributed plaintiff's headaches to her tension, cervical disc disease, and migraines.  (T. 2363).  They indicated that plaintiff was not a malingerer.  (*Id.*).

Dr. Latif and PA Trickey concluded that plaintiff's prognosis was fair, and that her impairments had lasted, or could expect to last, for at least twelve months.  (T. 2364).  They opined that "during times [plaintiff] has a headache," she would "generally be precluded from performing even basic work activities and need a break from the workplace."  (*Id.*).  Dr. Latif and PA Trickey indicated that plaintiff would need to lie down at unpredictable intervals during a work shift, at a frequency of two to three times per week.  (*Id.*).  They found that plaintiff's impairments would cause her to be absent from work a "couple times per week."  (T. 2365).

The ALJ explicitly considered the medical source statement cosigned by Dr. Latif and PA Trickey in his written decision, finding the opinion to be an "overestimate" of plaintiff's functional limitations.  (T. 27).  The ALJ acknowledged the significant limitations opined regarding breaks throughout the workday and absenteeism; however she noted that the providers failed to "identify any objective

---

[3] The court assumes that the form provided by plaintiff's counsel was intended to state "photosensitivity."

11

findings to support such significant functional limitations." (*Id.*). The ALJ also acknowledged Dr. Latif's opinion as to the frequency and severity of plaintiff's headaches. However, the ALJ pointed out that plaintiff's records routinely described her neurological evaluation as "generally within normal range." (*Id.*). The ALJ also stated that, "[t]ypically, a migraine headache can be objectively observed, and [plaintiff] has never been observed to have one in any of the records." (*Id.*). He further observed that plaintiff "acknowledged that her headaches improved with Botox, and that by October 2017 neurology records "described [plaintiff's] migraine headaches as stable, and she declined any further Botox injections." (*Id.*).

Based on the aforementioned, the ALJ found that Dr. Latif and PA Trickey's opinion was "not fully supported by the objective and clinical findings of record." (*Id.*). The ALJ afforded the opinion "limited weight." (*Id.*).

Because Dr. Latif treated plaintiff, his restrictive opinion regarding plaintiff's time off task and absenteeism due to her frequent migraines was subject to the treating physician rule. In giving the opinion less than controlling weight, the ALJ was required to "explicitly consider" the four *Burgess* factors to determine what weight to afford it. Despite defendant's argument to the contrary, the court cannot agree that the ALJ sufficiently complied with this duty. Specifically, the ALJ erred by not discussing the frequency, length, nature, and extent of treatment and the amount of medical evidence supporting the opinion. Instead, the ALJ merely acknowledged that Dr. Latif was a "treating neurologist," and, arguably, went on to address the third *Burgess* factor–the consistency of the opinion with the remaining medical evidence–in evaluating Dr.

12

Latif's assessment.  The ALJ's failure to consider the remaining *Burgess* factors does not comport with the treating physician rule, and "[a] more thorough examination of [Dr. Latif's] notes and observations—instead of focusing only on the evidence that did not support [Dr. Latif's] conclusions—may have led to greater weight being assigned to [this] opinion." *Bentley v. Comm'r of Soc. Sec.*, No. 19-CV-00739, 2020 WL 4677184, at *5 (W.D.N.Y. Aug. 12, 2020) (internal quotations and citation omitted).

Accordingly, the ALJ was required "either to give [Dr. Latif's] opinions controlling weight or to [otherwise] provide good reasons for discounting them." *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 15 (2d Cir. 2018) (citing inter alia 20 C.F.R. § 404.1527( [c] )(2)).  Indeed, 20 C.F.R. § 404.1527(c)(2) provides that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." "When the ALJ fails to provide a good reason for not giving the treating physician's opinion 'controlling weight,' remand is required unless adherence to the rule could have only lead to the same conclusion." *Id. (*citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).

Here, the ALJ did not otherwise provide "good reasons" for affording Dr. Latif's opinion less than controlling weight. As the Second Circuit recently reiterated, "headaches are subjective symptoms not subject to objective testing." *Drake v. Saul*, No. 20-204, ___ Fed. App'x ____, 2020 WL 7294561, at *2 (2d Cir. Dec. 11, 2020); *see also Groff v. Comm'r of Soc. Sec.,* No. 05-CV-54 (NAM/RFT), 2008 WL 4104689, at *7 (N.D.N.Y. Sept. 3, 2008) ("[T]o place such emphasis on the absence of 'any

13

specific evaluation or treatment' is not only a misstatement of the medical evidence, but is also a misreckoning of the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines."). Thus, it was improper for the ALJ to discount Dr. Latif's opinion based on lack of objective "findings" or "observations" upon neurological examination. Likewise, the absence of an observed migraine in plaintiff's treatment records did not constitute a good reason to afford Dr. Latif's opinion less than controlling weight. *See e.g, Kelsey O. v. Comm'r of Soc. Sec.*, No. 3:17-CV-525(ATB), 2018 WL 3193197, at *5 (N.D.N.Y. June 28, 2018) ("The ALJ's reliance on isolated treatment notes showing that plaintiff was not experiencing headaches at the time of the examination fails to recognize the episodic nature of the impairment."); *Groff v. Comm'r of Soc. Sec.*, 2008 WL 4104689, at *8 ("[Migraine] symptoms usually follow a pattern in each patient . . . . The patient may have attacks daily or only once every several months.") (citing The Merck Manual 1376 (17th ed. 1999)). Nevertheless, plaintiff's treatment records did indicate that she was often in physical pain upon examination, as indicated by "changing positions often," "facial grimaces," "rubbing of body area," and "the need to lay down."  (T. 2193, 2199, 2396, 2445, 2452).

The ALJ's remaining reasons for affording Dr. Latif's opinion less than controlling weight are equally insufficient.  The ALJ focused on plaintiff's reported improvement after Botox injections.  However, plaintiff testified that she had to discontinue the Botox treatment because of the negative side affects, including week-long bouts of nausea, dry heaves, and pain.  (T. 1891).  The medical record confirms

that plaintiff discontinued treatment with Botox. Equally unpersuasive is the ALJ's justification that, "[w]hile the [plaintiff] reported to worsening headaches such that she is unable to function, she acknowledged that she was still technically able to function." (T. 28). *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998)(quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)) ("[A] claimant need not be an invalid to be found disabled under the Social Security Act.").

Last, the court finds that the isolated comments identified by the ALJ that plaintiff's migraines appeared "stable at this time," or were, at times, "controlled," do not necessarily contradict the opinion that plaintiff's migraines would affect her time off task and absenteeism, considering the nature of the condition and the other treatment records noting the changing frequency of plaintiff's migraines. *See Disotell v. Comm'r of Soc. Sec.,* No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *9 (N.D.N.Y. Aug. 14, 2017) (citing *Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)) ("To be sure, the term 'stable' does not necessarily equate with 'good'").

For these reasons, the court concludes that the ALJ's assessment of Dr. Latif's opinion did not comport with the treating physician rule. The ALJ's failure to provide "good reasons" for rejecting Dr. Latif's opinion regarding plaintiff's limitations due to her migraine condition was procedural error, and the court cannot conclude that such error was harmless based on the record presented. Plaintiff consistently reported that she suffered from migraine pain that reached levels of ten out of ten with associated spasms in the eye lids, photophobia, phonophobia and nausea. She was prescribed a litany of medication, and received botox injections, in an effort to manage the severity

of her migraines. Dr. Latif and PA Trickey treated plaintiff on a regular basis for over two years for her migraine symptoms, and they specifically opined that plaintiff was not a malingerer. Considering these facts, it is clear that "[t]his is not a case where application of the treating physician rule could lead to only one conclusion, i.e. that the claimant was not disabled, obviating the need for remand." *Messina v. Comm'r of Social Sec.,* 747 Fed. App'x at 17.

Because this matter requires remand for the ALJ to reevaluate Dr. Latif's medical opinion and plaintiff's RFC, the court need not address plaintiff's remaining arguments on the merits. Upon remand, the ALJ is instructed to consider all the medical evidence submitted by the plaintiff, including those records submitted to the court which are the subject of plaintiff's argument that the ALJ failed to develop the record. As appropriate, the ALJ should otherwise consider each of the other alleged errors not discussed in this decision. *See Critoph v. Berryhill*, No. 1:16-CV-00417, 2017 WL 4324688, at *4 (W.D.N.Y. Sept. 28, 2017) ("The ALJ is instructed to consider these additional arguments on remand."); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand.")

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: January 7, 2021

Andrew T. Baxter
U.S. Magistrate Judge